UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM DUPUIS,

       Petitioner,                               Case No. 04-CV-74954-DT
                                                         Honorable Patrick J. Duggan

v.

WILLIE SMITH,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A
WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 24, 2006.

PRESENT:  THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Petitioner Adam Dupuis ("Petitioner"), a state inmate currently incarcerated at the Standish Maximum Correctional Facility in Standish, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in violation of his constitutional rights.  Petitioner challenges his convictions of two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and one count each of conspiracy to commit first-degree murder, MICH. COMP. LAWS § 750.316, felony firearm, MICH. COMP. LAWS § 750.227b, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, and discharging a firearm from a motor vehicle, MICH. COMP. LAWS § 750.234a.  Respondent filed an answer to the petition on June 30, 2005.  For the reasons

set forth below, this Court denies Petitioner's application for a writ of habeas corpus.

## Procedural Background

Petitioner was tried and convicted before a jury in the Circuit Court for the County of Saginaw, State of Michigan, the Honorable Lynda L. Heathscott, presiding. On January 8, 2002, Judge Heathscott sentenced Petitioner. Petitioner subsequently filed a direct appeal with the Michigan Court of Appeals, raising the following issues:

> I. Petitioner was deprived of his protective rights against double jeopardy under the federal and state constitutions when he was convicted of both assault with intent to murder and for an intentional discharge of a firearm from a motor vehicle.
>
> II. Petitioner's federal constitutional right to a fair trial was violated by the presence on his jury of a person who had extraneous knowledge of the Dupuis family.
>
> III. Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel where defense counsel called Detective Timothy Fink to the stand who testified to finding a bullet casing inside the car where Petitioner was found.

On October 23, 2003, the Michigan Court of Appeals issued an unpublished *per curiam* opinion affirming Petitioner's convictions. *People v. Dupuis*, No. 239315 (Mich. Ct. App. Oct. 23, 2003). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, setting forth the same claims he raised in the Michigan Court of Appeals. On April 30, 2004, the Michigan Supreme Court denied leave to appeal. *People v. Dupuis*, No. 125195 (Mich. April 30, 2004). On December 21, 2004, Petitioner filed the pending petition for writ of habeas corpus, setting forth the same claims that he

raised in both state appellate courts.

## Trial Proceedings and Evidence[1]

This case arises as a result of a drive-by shooting that occurred on July 1, 2001, in front of the home of Elizabeth Chadwick ("Chadwick") in Saginaw, Michigan. The evidence revealed that in the Summer of 2001, Petitioner and his friend, Robert Woods ("Woods"), who was a co-defendant in the case, began accusing an acquaintance, Kurt Jones ("Jones"), of being a snitch. Petitioner and Woods had been to Chadwick's home on several occasions, as they were friends with one of her daughters. Chadwick testified that on one of those occasions, she heard Petitioner and Woods state that "they were going to hurt Kurt. They were going to kill Kurt." *See* 11/15/02 Trial Tr. Vol. II at 82-84. Several other witnesses testified that they heard Petitioner threaten Jones prior to the day of the shooting.

At trial, the prosecution presented a number of witnesses who were present when the drive-by shooting occurred on July 1, 2001. Those witnesses included Chadwick, her daughters Wendy Barrientes, Crystal Allen, and Stephanie Allen, Alicia Bledson, Ashley Martinez, Alex Gomez, and Jones. These witnesses testified that they saw a Chevy Cavalier driving toward Chadwick's residence and they identified Petitioner as the passenger and Woods as the driver. The witnesses further described seeing Petitioner holding a gun out the window and shooting at the crowd in front of Chadwick's home.

---

[1]This summary of the trial testimony is set forth by Petitioner in his brief on appeal to the Michigan Court of Appeals, which is attached to his habeas petition.

Jones also testified about a shooting that had occurred a week earlier, on June 26, 2001, at his mother's residence. At that time, Jones was living with his mother. According to Jones, the house was "shot up" while he was sleeping. *See* 11/15/01 Trial Tr. Vol. II at 209. Jones testified that at the time of the shooting, he was having problems with Petitioner. *See id.* at 210-211.

Police examined shell casings recovered from both shootings. They determined that the recovered casings were .380 caliber automatic shell casings and that they came from the same firearm. The police also recovered two fired bullets from the location of the July 1 shooting and determined that they were from the same firearm. *See* 11/15/01 Trial Tr. Vol. II at 55-57; 11/16/01 Trial Tr. Vol. III at 58-59.

Shortly after the July 1 shooting, the police located a black Chevy Cavalier parked somewhere on Bond Street with four individuals inside vehicle. Petitioner was at the same location on Bond Street, inside a gray Chevy Cavalier. In the gray Cavalier, the police found a live .380 cartridge on the right-rear passenger floorboard. It matched the casings found at the locations of the June 26 and July 1 shootings.

**Standard of Review**

Petitioner's application for a habeas relief is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996). Specifically, the AEDPA provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

> adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d). Pursuant to the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000). Under the "unreasonable application" clause, a federal court may grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

## Applicable Law and Analysis

### Petitioner's Double Jeopardy Claim

In his first claim for habeas relief, Petitioner contends that the state courts erred in holding that his convictions of assault with the intent to commit murder and intentional discharge of a firearm from a motor vehicle do not violate double jeopardy.

The Fifth Amendment Double Jeopardy Clause provides: "[N]or shall any person

be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Supreme Court has held that the Double Jeopardy Clause "protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28, 118 S.Ct. 2246, 2250 (1998)(citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969)). The prohibition is applicable to the States through the Fourteenth Amendment. *Id*. at 727; *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056 (1969).

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932). *Brown v. Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 2225. As the Supreme Court explained that test in *Brown*:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . ." This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . ."

*Id*. at 166, 97 S. Ct. 2225-26 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 1294 n.17 (1975)). Applying the *Blockburger* test to Petitioner's challenged convictions, the Court concludes that the state courts correctly rejected

Petitioner's Double Jeopardy claim.

Pursuant to Michigan law, assault with intent to commit murder requires proof of the following elements: (1) an assault, (2) with the specific intent to kill, (3) which, if successful, would make a death resulting from the assault a murder. *People v. Brown*, 267 Mich. App. 141, 147, 703 N.W.2d 230 (2005); *see also People v. McRunels*, 237 Mich. App. 168, 181, 603 N.W.2d 95 (1999). In comparison, a conviction under Section 750.234a requires proof that the defendant discharged a firearm from a motor vehicle, in a manner so as to endanger another person. MICH. COMP. LAWS ANN. § 750.234a. As the Michigan courts have correctly found, these two offenses require different elements. *See People v. Rivera*, 216 Mich. App. 648, 651, 550 N.W.2d 593 (1996). The former requires proof of a specific intent; the latter requires the involvement of an automobile. Petitioner's convictions for both offenses therefore did not violate the Double Jeopardy Clause.

### B.  Juror Misconduct Claim

On July 26, 2002, Petitioner filed a post-conviction motion requesting an evidentiary hearing to determine whether his constitutional right to a fair trial was violated by the presence of a juror on his jury who had extraneous knowledge of his family. The trial court denied Petitioner's motion, concluding that it was untimely filed. Petitioner claims that the trial court's decision violated his Sixth Amendment right to an impartial jury.

Because Petitioner was aware of the juror's alleged acquaintance at the beginning

of his trial, *see* Resp. Answer Ex. 1, yet failed to raise it at that time, his claim is precluded. As several courts have held, including the Sixth Circuit Court of Appeals, "a defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct." *United States v. Jones*, 597 F.2d 485, 488 n.3 (5th Cir. 1979); *Oakes v. Howard*, 473 F.2d 672, 674 (6th Cir. 1973); *United States v. Carter*, 433 F.2d 874, 876 (10th Cir. 1970); *see also United States v. Brumbaugh*, 471 F.2d 1128, 1132 (6th Cir. 1973)(McCree, J., concurring)(citing cases for the "general rule that misconduct in connection with the jury will not be grounds for a mistrial after a verdict is returned if defendant or his counsel knew of the misconduct prior to return of the verdict and did not alert the court.") Moreover, based on the overwhelming evidence of guilt presented by the state, the Court concludes that any error was harmless.

### C. Ineffective Assistance of Counsel Claim

Finally, Petitioner contends that he is entitled to habeas relief because his trial counsel was ineffective. Specifically, Petitioner argues that his counsel was constitutionally deficient for calling Detective Timothy Fink as a witness, as Detective Fink testified to finding a bullet casing inside the car in which Petitioner was located after the July 1 shooting. Petitioner claims that the bullet, which was the same make as those found at the scene, was the only physical evidence linking him to the shooting.

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the

8

defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). With respect to the performance prong of the *Strickland* test, the petitioner must identify acts or omissions of counsel and "[t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Regardless of whether Petitioner can establish the deficiency of his counsel's performance, he cannot show that, but for Detective Fink's testimony, there is a reasonable probability that the result of the proceeding would have been different. Detective Fink did not present the only evidence linking Petitioner to the July 21 shooting. A crowd of people, many who previously knew Petitioner, were standing outside Chadwick's home when the shooting occurred. At least eight of those people testified at trial and identified Petitioner as the shooter. The Court therefore holds that Petitioner is not entitled to habeas relief based on this claim.

## Conclusion

For the reasons stated above, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that Petitioner's Application for a Writ of Habeas Corpus is

**DENIED WITH PREJUDICE**.

                                      s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE

Copies to:
Adam Dupuis, #383868
Standish Maximum Correctional Facility
4713 West M-61
Standish, MI 48658

Janet VanCleve, Esq.